J-S39044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MATTHEW MICHAEL ZENO | : | |
| | : | |
| Appellant | : | No. 21 MDA 2018 |

Appeal from the Judgment of Sentence November 29, 2017
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0004524-2006,
CP-36-CR-0004525-2006, CP-36-CR-0005552-2015

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 31, 2018**

Matthew Michael Zeno ("Zeno") appeals from the judgment of sentence imposed following the revocation of his probation and parole.  We affirm in part and vacate in part, and remand for further proceedings.

On May 1, 2007, Zeno entered a negotiated guilty plea, at Lancaster County case number 4524 of 2006 ("4524-2006"), to rape and sexual assault,[1] relating to abuse of a family friend, and at case number 4525 of 2006 ("4525-2006"), to indecent assault and two counts of criminal attempt,[2] relating to abuse of his minor sister.  On September 20, 2007, the trial court accepted Zeno's negotiated guilty plea at both cases, and sentenced Zeno, pursuant to the plea agreement, to an aggregate term of four to eight years

---

[1] **See** 18 Pa.C.S.A. §§ 3121(a)(1) and (c), 3124.1.

[2] **See** 18 Pa.C.S.A. §§ 3126(a)(1) and (4), 901(a).

in prison, followed by five years of probation. The trial court further directed Zeno to comply with Megan's Law III and all sex offender conditions, and to have no contact with the victims.

On November 12, 2015, while serving probation at 4524-2006 and 4525-2006, Zeno was charged with aggravated assault at Lancaster County case number 5552 of 2015 ("5552-2015").[3] The trial court conducted a ***Gagnon II***[4] hearing on October 13, 2016, and found Zeno to be in violation of his probation at 4524-2006 and 4525-2006. The trial court deferred re-sentencing pending a pre-sentence investigation ("PSI"). On January 24, 2017, the trial court sentenced Zeno to an aggregate sentence of one year, less one day, to two years, less one day, in prison, followed by three years of probation, to be served concurrently to the sentence imposed for his conviction at 5552-2015.

On June 18, 2017, while serving parole at 4524-2006, 4525-2006, and 5552-2015, Zeno was charged with simple assault at Lancaster County case number 3909 of 2017 ("3909-2017").[5] On August 23, 2017, the trial court conducted a ***Gagnon II*** hearing and, pursuant to a stipulation by Zeno, found

---

[3] On August 26, 2016, Zeno pled guilty at 5552-2015 to an amended charge of simple assault, and was sentenced to time served to twenty-three months in prison.

[4] ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

[5] On October 17, 2017, Zeno entered a negotiated guilty plea at 3909-2017, and was sentenced to three to twenty-three months in prison.

him to be in violation of his parole at all three dockets, and his probation at 4524-2006 and 4525-2006. The trial court deferred sentencing pending a PSI. On November 29, 2017, the trial court terminated Zeno's parole, revoked his probation,[6] and sentenced him, at 4524-2006 and 4525-2006, to two concurrent sentences of two to ten years in prison, and at 5552-2015, remanded him to prison to serve the balance of his maximum sentence, to be served concurrently with the sentences imposed at 4524-2006 and 4525-2006.

Zeno filed a post-sentence Motion, which the trial court denied. Zeno filed a timely Notice of Appeal[7] and a court-ordered Pa.R.A.P. 1925(b) Concise

_____

[6] **See Commonwealth v. Ware**, 737 A.2d 251, 253-54 (Pa. Super. 1999) (stating that a trial court may revoke or change an order of probation at any time before the defendant has completed the maximum period of probation, including "before he has begun service of his probation."); **see also id.** (stating that "once the court [has] revoked [the defendant's] probation, it [has] the same sentencing options available that existed at the time of the original sentencing.").

[7] We note that Zeno filed one Notice of Appeal for the sentences imposed at the three lower court docket numbers. Our Supreme Court has held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case." **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018). However, the Court in **Walker** declined to apply the rule to the case before it, because to do so would run "contrary to decades of case law from [the Pennsylvania Supreme Court] and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." **Id.** Although the Court instructed that in all future cases, a failure to file a notice of appeal for each lower court docket will result in quashal of the appeal, Zeno's Notice of Appeal was filed prior to the **Walker** ruling. Accordingly, **Walker** is not controlling in the instant appeal, and we decline to quash Zeno's appeal.

Statement of errors complained of on appeal.

On appeal, Zeno raises the following question for our review:

Was the trial court's aggregate sentence of two (2) to ten (10) years of incarceration for a violation of parole and probation so manifestly excessive as to constitute too severe a punishment, unreasonable under the circumstances of this case, inconsistent with the rehabilitative needs of [Zeno], and therefore, an abuse of discretion?

Brief for Appellant at 4.

Zeno contends that his aggregate sentence of two to ten years for his convictions at 4524-2006 and 4525-2006 was manifestly excessive. *Id.* at 12, 13. Zeno alleges that the trial court failed to consider his "strong need for mental health treatment." *Id.* at 14. Zeno argues that the court acknowledged Zeno's diagnoses of bipolar disorder and post-traumatic stress syndrome ("PTSD"), and recognized that "all of [Zeno's] problems stem from him not having or taking his medication." *Id.* (ellipses, quotation marks and citation omitted). According to Zeno, despite the court's recognition of his mental health conditions, it sentenced him to a lengthy period of incarceration, instead of a "lesser period of incarceration, followed by intensive mental health

treatment." **Id.** at 14. Zeno contends that his sentence should be reversed, and the case remanded for resentencing. **Id.**[8]

Zeno's claims implicate the discretionary aspects of his sentence following the revocation of his parole and probation. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> * * *
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

**Id.** (quotation marks and some citations omitted).

---

[8] It appears that Zeno is only contesting the sentences at 4524-2006 and 4525-2006, and not his parole revocation at 5552-2016. However, even if Zeno is contesting the sentence at 5552-2016, the trial court's parole revocation and remand for the balance of Zeno's original sentence was proper. **See Commonwealth v. Kalichak**, 943 A.2d 285, 290 (Pa. Super. 2008) (stating that "the only option for a court that decides to revoke parole is to recommit the defendant to serve the already-imposed, original sentence.").

- 5 -

Here, Zeno filed a timely Notice of Appeal, raised his sentencing claim in the Motion to Modify Sentence, and included a Rule 2119(f) Statement in his brief. Further, Zeno's claim that the sentencing court's sentence is inconsistent with the provisions of 42 Pa.C.S.A. § 9721 and failed to consider Zeno's rehabilitative needs, raises a substantial question. *See* Brief for Appellant at 11; *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (stating that an appellant raises a substantial question where he alleges that "the trial court failed to consider relevant sentencing criteria, including … the rehabilitative needs of [a]ppellant."). Thus, we will consider the merits of Zeno's claim.

Our standard of review is well-settled:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014).

The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant appears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721.

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) (some citations and quotation marks omitted).

Upon revocation of probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentence, including incarceration. 42 Pa.C.S.A. § 9771(b). However, the imposition of total confinement upon revocation requires a finding that either "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." *Id.* § 9771(c).

Moreover, "[i]n every case in which the court ... resentences an offender following revocation of probation, ... the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason

- 7 -

or reasons for the sentence imposed." *Id.* § 9721(b); *see also* Pa.R.Crim.P. 708(D)(2) (providing that "[t]he judge shall state on the record the reasons for the sentence imposed."). However, following revocation of probation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. *See Pasture*, 107 A.3d at 28 (stating that "since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing.").

The trial court addressed Zeno's claim as follows:

A review of the record clearly demonstrates a meaningful consideration of the appropriate and relevant sentencing factors, including the PSI, [Zeno's] age, maturity, intelligence and work history. [Zeno's] prior record was taken into consideration, including the prevalence of violent crimes and the fact that [Zeno's] current violation occurred less than a month after his release from incarceration. Contrary to [Zeno's] claims, specifically noted and discussed at length was [Zeno's] mental health issues, his family history and his history of treatment. However, it was also noted that despite being given multiple opportunities and instructions to seek and obtain treatment and medication in the past, and despite asserting in court that he knows he has an issue and wants to get better, [Zeno] fails to take the steps necessary to follow through with treatment and medication. When [Zeno] is not on his medication, he is violent and a serious danger to the public. Therefore, [Zeno] was sentenced to a term of incarceration, he was made eligible for all available programs[,] and a recommend[ation] was made that he be placed in a [s]tate [c]orrectional [i]nstitution that provides a dual diagnosis program to assist [Zeno] with the treatment of his mental health issues. [Zeno's] aggregate sentence is proper and appropriate in light of all the relevant factors and takes into consideration the protection of the public, the gravity of the

offense on the victims and community[,] and the rehabilitative needs of [Zeno].

Trial Court Opinion, 2/6/18, at 4-5 (footnotes omitted); *see also* *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (stating that "[w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself."); *id.* (noting that "[h]aving been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.").

Based upon the foregoing, our review of the record confirms that the trial court had sufficient information to make a fully informed sentencing decision following the revocation of Zeno's probation. Additionally, we conclude that Zeno's prison sentence is not manifestly excessive. Discerning no abuse of discretion by the trial court, we will not disrupt Zeno's sentence on appeal. *See Devers, supra*.

Furthermore, we *sua sponte* raise the issue of Zeno's sex offender

registration requirements in light of Megan's Law III being deemed unconstitutional.[9]  ***See Commonwealth v. Batts***, 163 A.3d 410, 442 (Pa. 2017) (stating that "the legality of a particular sentence … may [] be raised by an appellate court *sua sponte*.").  Because Zeno was advised of his registration requirements under Megan's Law III, we remand to the trial court

---

[9] On December 16, 2013, the Supreme Court of Pennsylvania ruled that Megan's Law III was unconstitutional because Act 2004-152 (Act 152), including the provisions of Megan's Law III, amounted to omnibus legislation, which violated the Single Subject Rule of Article III, Section 3, of the Pennsylvania Constitution.  ***See Commonwealth v. Neiman***, 84 A.3d 603, 615 (Pa. 2013).  The Supreme Court directed that its decision be stayed for 90 days to provide the Legislature the opportunity "to consider appropriate remedial measures, or to allow for a smooth transition period."  ***Id.*** at 616.  The Sexual Offender Registration and Notification Act ("SORNA") went into effect on December 20, 2012, and "provided for the expiration of Megan's Law III at that time."  ***Commonwealth v. Derhammer***, 173 A.3d 723, 725 (Pa. 2017).  Subsequently, the Supreme Court of Pennsylvania held that the registration provisions under SORNA were unconstitutional.  ***See Commonwealth v. Muniz***, 164 A.3d 1189, 1218 (Pa. 2017) (holding that SORNA's registration requirements are punitive in nature, not civil).

for the sole purpose of determining Zeno's registration requirements.[10]  We affirm Zeno's judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions.  Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2018

_____

[10] The Legislature recently amended the SORNA, adding, *inter alia*, section 9799.55, which states the following, in relevant part:

> **(b) Lifetime registration.--**The following individuals shall be subject to lifetime registration:
>
> ….
>
> (2) Individuals convicted:
>
> (i)(A) in this Commonwealth of the following offenses, if committed on or after April 22, 1996, but before December 20, 2012:
>
> 18 Pa.C.S.[A.] § 3121 (relating to rape);
>
> ….
>
> 18 Pa.C.S.[A.] § 3124.1 (relating to sexual assault)[.]

42 Pa.C.S.A. § 9799.55.

- 11 -